IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RODNEY J. MURPHY,          )
                           )
      Plaintiffs,       )
                           )
v.                      )      Case No. 2:21-cv-526-RAH-SMD
                           )
DARDEN CORPORATION, *et al.*, )
                           )
      Defendants.     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the Court is Plaintiff Rodney J. Murphy's ("Murphy") Complaint (Doc. 1) that attempts to assert claims for violations of, *inter alia*, Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. Compl. (Doc. 1) p. 3. For the reasons that follow, the undersigned recommends that Murphy's case be dismissed without prejudice.

## I.    JURISDICTION

Federal courts are courts of limited jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). As such, federal courts only have the power to hear cases they have been authorized to hear by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: (1) cases that arise under federal law, § 1331, and (2) cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a). *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Courts presume that causes of action "lie[] outside

this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

Murphy's Complaint alleges violations of the ADA and Title VII. Because these are federal statutes, this case presents a federal question within this Court's original jurisdiction under 28 U.S.C. § 1331.[1]

## II.   PROCEDURAL HISTORY

On August 24, 2021, the undersigned granted Murphy's request to proceed *in forma pauperis* and stayed service of the Complaint pending review under 28 U.S.C. § 1915(e). Order (Doc. 5). Pursuant to that review, the undersigned determined that the Complaint did not meet the federal pleading standard. Order (Doc. 7). Specifically, the undersigned found that Murphy's claims were insufficiently pleaded and that he had likely not administratively exhausted his ADA claim. *Id.* at 5-13. Accordingly, the undersigned directed Murphy to file an amended complaint that complied with the Federal Rules of Civil Procedure and remedied the deficiencies raised in the undersigned's order. *Id.* at 13-14.

Murphy did not file an amended complaint during the time allotted. Thus, the undersigned entered a second order directing Murphy to show cause "why his case should not be dismissed for failure to prosecute and/or abide by orders of the Court." Order (Doc.

---

[1] Murphy's form complaint also indicates that he is attempting to bring state law claims. *See* Compl. (Doc. 1) p. 3. However, he fails to explicitly identify the claims or provide the state laws giving rise to the purported claims. He also fails to allege sufficient facts for the undersigned to construe any state law claims. As such, it is unnecessary for the undersigned to examine whether the Court should exercise supplemental jurisdiction over any state law claims.

8) p. 1. Alternatively, the undersigned afforded Murphy an extended opportunity to file an amended complaint as previously instructed. *Id.*

Murphy filed a response to the show cause order in which he stated he "has already shown cause, the evidence was attached to the original Complaint." Response (Doc. 9) p. 1. Murphy's filing, while not responsive to the undersigned's show cause order, indicates that he wishes to pursue this matter. Because Murphy has not filed an amended complaint, his original Complaint remains operative.

## III.    ANALYSIS

Murphy's Complaint fails to satisfy the pleading standards set out in the Federal Rules of Civil Procedure and he has likely not administratively exhausted his ADA claim. As such, the undersigned recommends that Murphy's Complaint be dismissed without prejudice.

### A.  Murphy's Complaint Fails to Allege Sufficient Facts to State Claims

To the extent the undersigned can discern the claims Murphy is attempting to assert, the Complaint fails to allege sufficient facts to support those claims.

#### i.      Murphy's Title VII Claims Are Insufficiently Pleaded

Based on Murphy's EEOC charge, it appears he is attempting to assert a race discrimination claim based on termination from his employment. Additionally, Murphy may be attempting to assert a hostile work environment claim and a retaliation claim under Title VII. As explained below, however, these claims are insufficiently pleaded.

### 1. Murphy's Title VII Race Discrimination Claim Is Insufficiently Pleaded

A Title VII race discrimination claim is established upon proof that (1) the person belongs to a protected class; (2) they were qualified to do their job; (3) they were subjected to adverse employment action; and (4) their employer treated employees outside the class who were similarly situated more favorably. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). While a Title VII complaint need not allege a prima facie case of race discrimination, it must include sufficient factual allegations that plausibly suggest that intentional racial discrimination resulted in the plaintiff experiencing an adverse employment action. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curium). Conclusory statements are insufficient to support such a claim. *See Mitchell v. Wise Constr.*, 2021 WL 2212386, at * 3 (S.D. Ala. Apr. 21, 2021) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Murphy does not provide sufficient factual allegations to plausibly suggest that he was terminated because of his race. Murphy asserts his race as "Moor" and his color as "Black"; thus, he alleges he belongs to a protected class. Compl. (Doc. 1) p. 4. He also claims to have experienced an adverse employment action, namely that he was discharged from his job. Compl. Ex. 1 (Doc. 1-1) p. 2. But assuming *arguendo* that he was qualified to perform his job, the only allegations implicating race involve his co-worker who used a racial slur and directed several expletives at him. *Id.* Importantly, Murphy does not allege that a manager or superior treated him differently because of his race or that those outside of his protected class were treated more favorably. *See Crawford*, 529 F.3d at 970. Because

4

his statement that he was discharged because of his race is purely conclusory, he has failed to state a claim of race discrimination under Title VII. *Mitchell*, 2021 WL 2212386, at *3.

## 2. Murphy's Title VII Hostile Work Environment Claim Is Insufficiently Pleaded

A hostile work environment claim under Title VII is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Importantly, Title VII is not meant to serve as "a general civility code." *Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 630 (11th Cir. 2007) (*citing Oncale v. Sundowner Offshore Servs.*, *Inc.,* 523 U.S. 75, 81 (1998)).  A plaintiff wishing to establish a hostile work environment claim must show that: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for such environment under a theory of either vicarious or direct liability. *See, e.g., Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (applying these factors in the context of a hostile environment sexual harassment claim).

The "severe or pervasive" requirement contains both an objective and a subjective component. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). In evaluating the objective severity of the harassment, a court considers: "(1) the frequency

of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*

If Murphy is asserting a hostile work environment claim, the only conceivable factual allegations to support such a claim are that Dennis Sanders ("Sanders"), a Black male co-worker, called him "an old a** hoe[,]" the n-word, and a "bi**h." Compl. Ex. 1 (Doc. 1-1). Murphy asserts that this same co-worker informed him that he would "get [Murphy] in the street." *Id.* While such conduct is offensive and inappropriate, the conduct is not "severe or pervasive" enough to constitute a hostile work environment.[2] Indeed, although the use of racial epithets is never appropriate, case law makes clear that occasional use of even the most incendiary epithets, without more, does not result in actionable conduct.[3] For these reasons, Murphy's Complaint fails to state a Title VII hostile work environment claim.

---

[2]  *See, e.g., Adams v. Austal, U.S.A., L.L.C.,* 754 F.3d 1240, 1254 (11th Cir. 2014) (conduct was not sufficiently severe or pervasive where an African-American plaintiff "saw his coworkers wear the Confederate flag on a regular basis," "saw racist graffiti in the men's restroom that he used on a daily basis," "heard people say the slur 'n*****,' but only a 'few times,'" and heard about a noose being left in the breakroom, though he did not see it himself); *Barrow v. Ga. Pac. Corp.,* 144 F. App'x 54, 57 (11th Cir. 2005) (display of the rebel flag on tool boxes and hard hats, letters KKK appearing on bathroom wall and block-saw console, use of the "n" word three times or more a year, noose in employee's locker, and other isolated racial slurs, while offensive, were not so severe or pervasive as to alter conditions of employment).

[3] *See, e.g., Harrington v. Disney Reg'l Entm't, Inc.,* 276 F. App'x 863, 875–77 (11th Cir. 2007) (although offensive, reference to the plaintiff as "lazy n*****" and occasional use of term "ghetto" did not amount to actionable conduct for racial harassment claim); *Fortson v. Columbia Farms Feed Mill,* 34 F. Supp. 3d 1302, 1305–08 (M.D. Ga. 2014) (twelve racially derogatory comments in a seven month span, over two years of employment, is insufficient to support a hostile work environment claim); *Joseph v. Fla. Quality Truss Indus., Inc.,* 2006 WL 3519095, at *10 (S.D. Fla. Dec. 6, 2006) ("the mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.").

6

### 3. Murphy's Title VII Retaliation Claim Is Insufficiently Pleaded

To state a Title VII retaliation claim, a plaintiff must allege facts sufficient to show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the alleged protected activity and the adverse action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). An employee engages in protected activity when he "oppos[es] any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Id.* (quoting 42 U.S.C. § 2000e-3(a)). Significantly, "a racially derogatory remark by a co-worker, without more, does not constitute an unlawful employment practice under the opposition clause of Title VII . . . and opposition to such a remark, consequently, is not statutorily protected conduct." *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997). The Eleventh Circuit has held that a prima facia retaliation claim requires (1) a subjective, good faith belief that the employer is engaged in unlawful employment practices, and (2) that the belief was objectively reasonable in light of the facts and record presented. *Butler v. Ala, Dep't. of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008) (*citing Little*, 103 F.3d at 960).

If Murphy is attempting to assert a Title VII retaliation claim, his allegations are insufficient to support such a claim.[4] Murphy alleges only one occasion where he

---

[4] Although Murphy did not mark retaliation on his EEOC charge, he indicates in his Complaint that he believes he experienced retaliation during his employment. Compl. (Doc. 1) p. 3; Compl. Ex. 1 (Doc. 1-1)

complained to a superior regarding what could be considered an unlawful employment practice. Murphy asserts that he was asked by one of his managers to "provide a statement" to Defendant Chris Wayne ("Wayne") regarding Sanders's behavior on December 12, 2020.[5] Compl. Ex. 1 (Doc. 1-1) p. 2. He alleges that, after providing his statement to Wayne, he was discharged on December 31, 2020, for making a threat. *Id.* Accepting these allegations as true, opposition to Sanders's remark does not rise to the level of statutorily protected conduct. *See Little*, 103 F.3d at 961. As such, Murphy's Complaint fails to state a Title VII retaliation claim.

### ii.   Murphy's ADA Claims Are Insufficiently Pleaded and He Has Failed to Show that They Are Administratively Exhausted

Based on his reference to the statute, it appears that Murphy is attempting to assert an ADA failure-to-accommodate claim. However, Murphy's Complaint fails to sufficiently allege facts to state such a claim. Murphy has not shown (or even alleged) that he administratively exhausted his ADA claim prior to filing suit in this Court. If Murphy did not administratively exhaust his ADA claim, it is subject to dismissal.

### 1.   Murphy's ADA Claim Is Insufficiently Pleaded

To establish an ADA claim for failure to reasonably accommodate a disability, a plaintiff must show: (1) he has a disability within the meaning of the ADA; (2) the defendant had notice of his disability; (3) with a reasonable accommodation he could

---

p. 2-3. Therefore, based on a liberal construction of Murphy's Complaint, the undersigned will address this potential claim.

[5] Murphy alleges that Sanders directed several insults at him, including the use of the n-word, as well as saying Sanders would "get [Murphy] in the street." Compl. Ex. 1 (Doc 1-1).

perform the essential functions of his position; and (4) the defendant refused to make a reasonable accommodation for him. *Richardson v. Honda Mfg. of Ala., LLC*, 635 F. Supp. 1261, 1279 (N.D. Ala. 2009). Nowhere in Murphy's Complaint does he allege sufficient facts to support any of these elements.[6] As such, Murphy's Complaint fails to state a viable claim under the ADA.

### 2.      Murphy's ADA Claim May Not Be Administratively Exhausted

Under the ADA, "a plaintiff must comply with the same procedural requirements to sue that exist under Title VII." *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011) (unpublished) (citing 42 U.S.C. § 12117(a)). Under Title VII, an employee must file an administrative charge of discrimination with the EEOC as a prerequisite to a private civil action, and that charge of discrimination must be filed within 180 days of the alleged act of discrimination. *See* 42 U.S.C. § 2000e–5(e); *Stuart v. Jefferson Cnty. Dep't of Hum. Res.*, 152 F. App'x 798, 800 (11th Cir. 2005) (unpublished). Murphy's Complaint does not allege or otherwise show that he exhausted his administrative remedies for his ADA claim prior to filing suit in this Court. Indeed, while Murphy attaches his EEOC charge and right-to-sue letter based on race discrimination, he does not attach similar documentation indicating that he filed a charge related to any disability and that he received a right-to-sue letter based on that charge. Because Murphy has not shown that he administratively exhausted his ADA claim, it is subject to dismissal on that basis alone. *See Adkins v. Dep't*

---

[6] The closest Murphy comes to alleging a disability is mentioning his shoulder surgery that caused him to miss work for a short time. Compl. Ex. 1 (Doc. 1-1) p. 2.

*of Homeland Sec.*, 2015 WL 1394523, at *3 (M.D. Fla. Sept. 4, 2015) (dismissing a complaint where the plaintiff failed to allege sufficient facts indicating she had exhausted the available administrative remedies); *see also Claireborne v. Comm'r of Soc. Sec.*, 2013 WL 5720325, at *2 (M.D. Fla. Oct. 21, 2013) (recommending that the plaintiff's complaint be dismissed for failure to allege that she exhausted her administrative remedies before filing her complaint);.

## IV.    CONCLUSION

Accordingly, it is the

RECOMMENDATION of the undersigned Magistrate Judge that Murphy's Complaint (Doc. 1) be DISMISSED without prejudice. It is further

ORDERED that Murphy is DIRECTED to file any objections to this Recommendation **on or before November 4, 2022**. Murphy must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar Murphy from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of Plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  Murphy is

advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

DONE this 21st day of October, 2022.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE